```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON


ARTHUR BALLINGER IV,

        Plaintiff,

v.                                    Case No. 2:09-cv-00414

DR. DAGHER and
DR. GAJENDRAGAAKAR,

        Defendants.
```

## PROPOSED FINDINGS AND RECOMMENDATION

On April 23, 2009, Plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC"), filed a complaint, alleging that, as a result of a beating by correctional officers at MOCC, he is losing his eyesight. (Complaint, docket # 2, at 4.) While not completely clear, it appears that Plaintiff is claiming that the medical doctors are deliberately indifferent to his serious medical need because they have told him that he will not receive a corneal transplant while in prison.[1]  Id. at 5-6.

Plaintiff's complaint reads as follows:

> I was beaten by officer Young and officer Adams and several other officers, now I am losing my eyesight and the eye doctor said I need a cornea transplant. I have been losing my eyesight ever since the beating and the eye doctor said I have scars on my eyes and I need a cornea transplant and they are denying me treatment, saying it is not life threatening and not practical to be

---

[1] According to the West Virginia Division of Corrections' website, Plaintiff's projected release date is March 27, 2011.

>done in prison. But I can barely see and my eyesight continues to get worse. The doctor and the eye doctor won't give me the proper medical attention I need. I also have chipped teeth from the beating, but my eyesight is the concern. I filed a lawsuit about the beating. Shortly after I started losing my eyesight, I saw the eye doctor and he said that I had a scar on my right eye and asked if I had sustained an injury recently and I told him about the beating. He said I needed a cornea transplant and gave me glasses. Then my eye sight got worse and I saw him again and he said my eye sight would continue to get worse. The doctor told me in a sick call meeting that nothing could be done while in prison as the eye doctor said it was not practical and can't be done in prison. I had my grandmother call the prison. I was pulled into the captain's office and was basically threatened for my grandmother calling up here. My eye sight is worsening. My eye sight is become worse and worse as a result of the beating and medical will do nothing about it. I still haven't seen the medical unit concerning this G-1 from the Commissioner thru Ms. Sotak.

(Complaint, # 2, at 4-6.) Plaintiff seeks an award of "fiscal damages or order treatment be done for my eye sight." Id. at 6.

The defendants have each filed a motion to dismiss (## 8, 9). Plaintiff has filed a response (# 18) and the defendants have filed replies (## 19, 20).

### Dr. Gajendragaakar's Motion

Dr. Gajendragaakar's motion (# 8) contains three grounds: (1) there are no specific allegations against him; (2) the complaint fails to state a claim upon which relief may be granted for deliberate indifference to a serious medical need; and (3) Plaintiff failed to comply with the West Virginia Medical Professional Liability Act.

**Allegations Against Dr. Gajendragaakar**

2

Upon review of the file, it is apparent that Plaintiff's reference in his complaint to "the doctor" is to Dr. Gajendragaakar and his reference to "the eye doctor" is to Dr. Dagher, who is an ophthalmologist. Plaintiff makes two allegations: "[t]he doctor and the eye doctor won't give me the proper medical attention I need;" and "[t]he doctor told me in a sick call meeting that nothing could be done while in prison as the eye doctor said it was not practical and can't be done in prison." These two statements constitute claims that Dr. Gajendragaakar refused to provide medical treatment for Plaintiff's serious medical need of losing his eyesight. The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has made allegations against Dr. Gajendragaakar.

**Failure to State a Claim**

Losing one's eyesight is obviously a serious medical need. Dr. Gajendragaakar's memorandum asserts that he was merely relying on Dr. Dagher's opinion that a corneal transplant should not be performed in prison and is not "practical." (# 8-2, at 3.) This is not an accurate statement of Dr. Dagher's "Provider Consultation Report" submitted by Plaintiff. That Report sets forth a diagnosis of keratoconus OV [left eye], and corneal scarring OD [right eye]/ related to keratoconus. The Report further states: "1. glasses will help somewhat. 2. will need corneal transplant in the future as a definitive treatment of his condition. 3. hard contact

lenses - not practical while in prison!! will need many adjustments." (# 18, at 4.)

Keratoconus is defined as "[a] slowly progressive ectasia [dilatation or expansion] of the cornea, usually bilateral, beginning between ages 10 and 20." The Merck Manual, 17th ed., at 722 (1999).

> The cone shape that the cornea assumes causes major changes in the refractive power of the eye and necessitates frequent change of eyeglasses. Contact lenses may provide better visual correction and should ways be tried when eyeglasses are not satisfactory. Corneal transplant surgery may be necessary if vision with contact lenses is inadequate, the contact lenses are not tolerated, or a corneal scar is present.

Id.

Dr. Dagher's opinion is that Plaintiff will need a corneal transplant in the future, that glasses will help him now "somewhat" and that hard contact lenses will not be practical in a prison setting because numerous adjustment would be needed. Plaintiff asserts that Dr. Gajendragaakar has "refused to do surgery on my corneas." Id. at 1. This is insufficient to state a claim for deliberate indifference to a serious medical need. Dr. Gajendraakar is not qualified to perform the surgery; moreover, Dr. Dagher has written that Plaintiff will need the surgery "in the future," not now. Plaintiff has received glasses.

Plaintiff's response to the motion argues that Dr. Gajendraakar is showing "medical indifference because he told me he could authorize the surgery but wouldn't because Dr. Dagher told

4

him if would not be practical." (# 18, at 2.) Again, this is a misquote of Dr. Dagher's Report.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. See id. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. See Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint does not support a claim that Dr. Gajendraakar has been deliberately indifferent to Plaintiff's serious medical need.

**West Virginia Medical Professional Liability Act**

5

A suit filed pursuant to 42 U.S.C. § 1983 asserting a violation of a plaintiff's Federal constitutional right to be free of cruel and unusual punishment raises issues of federal law which may not be limited by a State statute. Plaintiff has not asserted a State claim of medical malpractice or negligence which would implicate State law. Accordingly, the pre-filing requirements of the MPLA have no application to Plaintiff's Eighth Amendment claims. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state"); Foreman v. FCI Beckley, Case No. 5:04-cv-01260, 2006 WL 4537211 (S.D. W. Va., Mar. 29, 2006)(Medical negligence claim brought under FTCA was dismissed for failure to comply with MPLA pre-filing requirements, but Bivens claim for deliberate indifference to serious medical need was not dismissed). The undersigned proposes that the presiding District Judge **FIND** that the West Virginia Medical Professional Liability Act does not apply to Federal suits filed pursuant to 42 U.S.C. § 1983, and alleging deliberate indifference to a serious medical need.

### Recommendation

It is respectfully **RECOMMENDED** that Dr. Gajendragaakar's motion to dismiss (# 8) be granted because Plaintiff's complaint fails to state a claim upon which relief may be granted.

### Dr. Dagher's Motion

Dr. Dagher's motion raises two grounds: the West Virginia Medical Professional Liability Act, and failure to state a claim upon which relief can be granted. For the reasons set forth above, the undersigned proposes that the presiding District Judge **FIND** that the West Virginia Medical Professional Liability Act does not apply.

Dr. Dagher's "Provider Consultation Report," submitted by Plaintiff, indicates the treatment which he recommends for Plaintiff's eye condition: "1. glasses will help somewhat. 2. will need corneal transplant in the future as a definitive treatment of his condition. 3. hard contact lenses - not practical while in prison!! will need many adjustments." (# 18, at 4.) From this document, one cannot conclude that Plaintiff needs a corneal transplant now, or that Dr. Dagher is deliberately indifferent to his serious medical need.

### Recommendation

It is respectfully **RECOMMENDED** that Dr. Dagher's motion to dismiss (# 9) be granted because Plaintiff's complaint fails to state a claim upon which relief may be granted.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil

Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to opposing counsel and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff and to transmit it to counsel of record.

<u>December 11, 2009</u>
      Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge